# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

[Use this form to sue for employment discrimination. NEATLY print in ink (or type) your answers.]

-FILED-

FEB 21 2020

Terrance D Benson,
[You are the PLAINTIFF, print your full name on this line.]

At _____ M
ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

v.

Case Number 2:20CV075

Polygon Company,
[The DEFENDANT is who you are suing.]

[For a new case in this court, leave blank.
The court will assign a case number.]

[The top of this page is the caption. Everything you file in this case must have the same caption. Once you know your case number, it is VERY IMPORTANT that you include it on everything you send to the court for this case. DO NOT send more than one copy of anything to the court.]

## EMPLOYMENT DISCRIMINATION COMPLAINT

1. My address is: 1405 W 18th Street BLD 10G Laporte, IN 46350

2. My telephone number is: (219) 380-9695

3. The Defendant's address is: 103 Industrial Park Dr, Walkerton IN 46574

4. This action is brought for employment discrimination pursuant to:

   ☑ Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17.
     [race, color, gender, religion, national origin]
   ☐ Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to 634.
   ☐ Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 to 12117.
   ☐ Other: _____

5. I filed a charge of discrimination with the Equal Employment Opportunity Commission or the Indiana Civil Rights Commission on: _____

6. The date on my Notice of Right to Sue letter is: 11/21/19

7. The date I received my Notice of Right to Sue letter was: 11/25/19

[DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.]

## CLAIMS and FACTS

DO: Write a short and plain statement using simple English words and sentences.

**DO NOT**: Quote from cases or statutes, use legal terms, or make legal arguments.

DO: Explain when, where, why, and how the defendant discriminated against you.

DO: Include every fact necessary to explain your case and describe your injuries or damages.

DO: Number any documents you attach and refer to them by number in your complaint.

**DO NOT**: Include social security numbers, dates of birth, or the names of minors.

DO: Number your paragraphs. [*The first paragraph has been numbered for you.*]

1. I, Terrance Benson feel as and act of retaliation I was denied my unemployment benifits after it was granted in my settlement agreement.

(documents attatched.)

[*DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.*]

RELIEF – If you win this case, what do you want the court to order the defendant to do?

I would like the court to order the defendant to pay my unemployment benefits which was agreed in my settlement agreement.

DOCUMENTS – I have attached a copy of the following documents:

- ⊗ Charge Of Discrimination form filed with the Equal Employment Opportunity Commission or the Indiana Civil Rights Commission
- ⊗ Notice of Right to Sue letter
- ◯ Other: _____

FILING FEE – Are you paying the filing fee?

- ◯ Yes, I am paying the $400.00 filing fee. I understand that I am responsible to notify the defendant about this case as required by Federal Rule of Civil Procedure 4. [*If you want the clerk to sign and seal a summons, you need to prepare the summons and submit it to the clerk.*]
- ⊗ No, I am filing a Motion to Proceed In Forma Pauperis and asking the court to notify the defendant about this case.

[*Initial Each Statement*]

_____ I will keep a copy of this complaint for my records.
_____ I will promptly notify the court of any change of address.
_____ I declare **under penalty of perjury** that the statements in this complaint are true.

_____        2-21-20
Signature                                             Date

[*DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.*]

EEOC Form 161 (11/16)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: Terrance D. Benson, Sr.
1408 West 18th Street
Building 10 Q
La Porte, IN 46350

From: Indianapolis District Office
101 West Ohio Street
Suite 1900
Indianapolis, IN 46204

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 470-2019-03527 | Michelle D. Ware, Enforcement Supervisor | (463) 999-1184 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

- NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice, or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_[signature]_     NOV 21 2019

Michelle Eisele,
District Director     (Date Mailed)

cc: Polygon Company
c/o Michael Palmer, Attorney
BARNES & THORNBURG
1st Source Bank Center
100 N. Michigan Street

Enclosure with EEOC
Form 161 (11/16)

# INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge within **90 days** of the date you receive this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** -- not 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, please make your review request within 6 months of this Notice. (Before filing suit, any request should be made within the next 90 days.)

**IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.**

## **CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE**

This Confidential Settlement Agreement and General Release (the "Agreement") is entered into between Polygon Company ("Polygon") and Terrence D. Benson, Sr. ("Mr. Benson"), collectively, the "Parties".

### RECITALS

A.   Mr. Benson filed an EEOC charge against Polygon, which is currently pending before the Equal Employment Opportunity Commission ("EEOC"), Charge No.: 470-2018-03093 captioned as *Terrence D. Benson, Sr. v. Polygon Company d/b/a LDI, Ltd LLC* (the "Charge"). In the Charge, Mr. Benson alleges claims of racial harassment.

B.   Polygon denied and continues to deny the allegations set forth in the Charge and believes the Charge would have ultimately been resolved in its favor. Nevertheless, the Parties desire to compromise and settle completely the disputes between them upon the terms and in the manner herein provided, to avoid the uncertainty, expense and burden of this matter, as well as any and all other actions and proceedings that might arise out of the same or related matters, based on any act which has occurred at any time, up to and including the date of the execution of this Agreement.

C.   Mr. Benson and his counsel acknowledge and understand that Centers for Medicare & Medicaid Services ("CMS") has the right, independent of this Agreement, under the Medicare Secondary Payer Statute and 42 C.F.R. § 411.24(g), to recover Medicare Conditional Payments from Mr. Benson's Counsel, at least up to the amount of attorneys' fees that Mr. Benson's Counsel has received from the settlement funds.

In consideration of the mutual promises contained in this Agreement, the Parties agree as follows:

### AGREEMENT

1.   **DEFINITION.** The term "Polygon" shall encompass the following throughout this Agreement:

   **(a)**   Polygon Company as well as any division, parent (including LDI, Ltd LLC), subsidiary, affiliated entity, or related entity of Polygon; and

   **(b)**   Any current or former officer, director, trustee, agent, employee, shareholder, representative, insurer, or employee benefit or welfare program or plan (including administrators, trustees, fiduciaries, and insurers of such program or plan) of an entity referenced in or encompassed by subparagraph 1(a).

2.   **DISMISSAL OF THE CHARGE.** Mr. Benson agrees to immediately take all steps necessary to dismiss the Charge. Mr. Benson further agrees Polygon shall have no other obligations or liabilities to him except as provided herein, and his receipt of the Settlement Sum (as defined in

Paragraph 4) provided herein shall constitute a complete settlement and satisfaction of the Charge and any and all claims he may have against Polygon.

3. **RESIGNATION AND NO RE-EMPLOYMENT.** Mr. Benson's employment with Polygon ended on November 14, 2018 (the "Separation Date"). Polygon will pay Mr. Benson his final pay check, which will include his unpaid wages and earned but unused vacation through November 13, 2018, on or before Polygon's next regularly scheduled pay date. As of the Separation Date, Mr. Benson will be relieved of all duties. Mr. Benson agrees that as a condition of this Agreement, he will not seek re-employment with Polygon at any time and should Mr. Benson apply in the future, his application for employment will not be considered by Polygon and will be null and void. Mr. Benson will not accrue any additional vacation following the Separation Date.

4. **SETTLEMENT CONSIDERATION.** In consideration for the execution by Mr. Benson of this Agreement and his compliance with the promises made herein, Polygon shall pay him the sum of Sixty Thousand and 00/100 Dollars ($60,000), less applicable withholdings (the "Settlement Sum"). Polygon shall deliver said Settlement Sum to Mr. Benson no later than December 1, 2018, as long as he signs this Agreement and the EEOC signs the Mediation Settlement Agreement terminating the EEOC's investigation of the Charge. The Settlement Sum shall be allocated as follows:

   (a) A check in the amount of Thirty Thousand Dollars ($30,000), less applicable withholdings, for lost wages, made payable to Mr. Benson, for which an IRS Form W-2 will be issued;

   (b) A check in the amount of Twenty Thousand Dollars ($20,000) for compensatory damages made payable to Mr. Benson, for which an IRS Form 1099 will be issued; and

   (c) A check in the amount of Ten Thousand Dollars ($10,000) for attorney's fees made payable to Mr. Benson's lawyer, Daniel Zamudio, Zamudio Law Professionals, 233 S. Colfax, Griffith, IN 46319, for which an IRS Form 1099 will be issued.

In addition, Polygon will not contest any claim filed by Mr. Benson for unemployment benefits. Nothing in this paragraph, however, shall preclude Polygon from responding truthfully to any inquiry from any government agency.

The payments described in this Paragraph 4 reflect consideration provided to Mr. Benson over and above anything of value to which he is already entitled. In paying the amount specified in Paragraph 4, Polygon makes no representation as to the tax consequences or liability arising from said payment. Moreover, the Parties understand and agree that any tax consequences and/or liability arising from the payment to Mr. Benson shall be the sole responsibility of Mr. Benson. Mr. Benson acknowledges and agrees he will pay any and all income tax that may be determined to be due in connection with the payment described in this Paragraph 4. Mr. Benson also agrees to indemnify Polygon, its affiliates, related entities, officers, directors, employees, and agents for any and all tax and/or other liability (including, but not limited to,

2

fines, penalties, interest, and costs) arising from or relating to the payment described in Paragraph 3 and this Paragraph 4 and/or imposed by the Internal Revenue Service, the State of Indiana, or any other taxing agency or tribunal.

Mr. Benson acknowledges and agrees the payments made pursuant to Paragraph 3 and this Paragraph 4 shall constitute full, final and complete settlement of monies, liabilities or other obligations claimed to be owed to him by Polygon, including (but not limited to) wages, benefits, attorney's fees, and all expenses of litigation. Moreover, the Parties expressly understand and agree that Polygon does not have, and will not have, any obligation to provide Mr. Benson at any time in the future any payments, benefits or considerations other than those recited in this Paragraph 3 and Paragraph 4 for events or obligations that occurred prior to the Effective Date (as defined in Paragraph 16).

5. **GENERAL RELEASE AND WAIVER.** Mr. Benson (for himself, his agents, assigns, heirs, executors and administrators) hereby releases and discharges Polygon from any claim, demand, action, or cause of action, known or unknown, which arose at any time from the beginning of time to the date he executes this Agreement, and waives all claims, demands, actions or causes of action relating to, arising out of, or in any way connected with his employment with Polygon, his application for employment with Polygon, the cessation of his employment with Polygon, or his interaction with Polygon prior to the Effective Date of this Agreement, subject to applicable law, including, without limitation, any claim, demand, action, cause of action, including money damages and claims for attorneys' fees, based on but not limited to:

(a) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*;

(b) The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*;

(c) The Equal Pay Act, as amended, 29 U.S.C. § 206, *et seq.*;

(d) The National Labor Relations Act, 29 U.S.C. § 151, *et seq.*;

(e) The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*;

(f) The Civil Rights Act of 1866 and 1964, as amended, 42 U.S.C. § 1981;

(g) Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*;

(h) The Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*;

(i) The Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, *et seq.*;

(j) The Rehabilitation Act of 1973, as amended;

3

**(k)** The Genetic Information Nondiscrimination Act of 2008, as amended;

**(l)** Sections 1981 through Sections 1988 of Title 42 of the United States Code, as amended;

**(m)** The Immigration and Nationality Act, as amended;

**(n)** The Indiana Civil Rights Law, Ind. Code § 22-9-1-1, *et seq.*;

**(o)** Indiana's common law with regard to wrongful termination;

**(p)** The Indiana Family Military leave law;

**(q)** Any existing or potential entitlement under any Polygon program or plan, with the exception of any vested benefits, including wages or other paid leave, to the maximum extent permissible by law;

**(r)** Any existing or potential agreement, contract, representation, policy, procedure, or statement (whether any of the foregoing are express or implied, oral or written); and

**(s)** Claims arising under any other federal, state and local statute, executive order, law, regulation, or ordinance relating to discrimination, employee leave, disability protections, wage and hour issues, whistleblower protections or any other employee or labor issues, and any duty or other employment-related obligation, claims arising from any other type of statute, executive order, law or ordinance, claims arising from contract or public policy, as well as tort, tortious cause of conduct, breach of contract, intentional infliction of emotional distress, negligence, discrimination, harassment, assault, battery, retaliation, wrongful termination, or any other tort claim, together with all claims for monetary and equitable relief, punitive and compensatory relief and attorneys' fees and costs; and

**(t)** The Indiana Constitution and/or the United States Constitution.

Mr. Benson understands and agrees he is releasing Polygon from any and all claims by which he is giving up the opportunity to recover any compensation, damages, or any other form of relief in any proceeding brought by him or on his behalf. Notwithstanding the foregoing, this Agreement is not intended to operate as a waiver of any retirement or similar benefits that are vested, the eligibility and entitlement to which shall be governed by the terms of the applicable plan. Nor shall this Agreement operate to waive or bar any claim or right, which — by express or unequivocal terms of law — may not under any circumstances be waived or barred.

Nothing in this Agreement shall be interpreted or applied in a manner that affects or limits Mr. Benson's otherwise lawful ability to bring an administrative charge with, to participate

4

in an investigation conducted by, or to participate in a proceeding the EEOC or other comparable federal, state or local administrative agency. However, Mr. Benson specifically agrees that the consideration provided to him under this Agreement represents full and complete satisfaction of any monetary relief or award that could be sought or awarded to him in any administrative action (including any proceedings before the EEOC, or any comparable federal, state or local agency) arising out of, or in any way connected with his employment with Polygon, his application for employment with Polygon, the cessation of his employment with Polygon, or his interaction with Polygon prior to the Effective Date of the Agreement. As such, Mr. Benson waives any right to recovery in a proceeding instituted on his behalf by an administrative agency or other entity regarding, or in any way connected with, his employment with Polygon, his application for employment with Polygon, the cessation of his employment with Polygon, or his interaction with Polygon prior to the Effective Date of the Agreement.

6. **DISCLAIMER OF LIABILITY.** The Parties agree and acknowledge that this Agreement is not to be construed as an admission of liability or wrong-doing by either Party, but is entered into in compromise of a disputed claim as well as any other claim or grievance of Mr. Benson against Polygon, whether known or unknown, that exists or might exist at the time this Agreement is executed.

7. **COVENANT NOT TO SUE.** Except for those claims, causes of action or rights explicitly excluded from release in Paragraph 5 above and a potential unemployment claim, Mr. Benson agrees to the fullest extent permitted by law not to sue or file any other charge, complaint, grievance or demand for arbitration against Polygon in any forum that arises out of facts or events which occurred at any time up to and including the Effective Date of this Agreement, unless required to do so by court order, subpoena or other directive by a court, administrative agency, arbitration panel or legislative body, or unless required to enforce this Agreement.

Should Mr. Benson violate any aspect of this Paragraph 7, Mr. Benson agrees: (i) that the Charge is null and void, and must be summarily withdrawn and/or dismissed; (ii) to pay all costs, expenses, and damages or costs incurred by Polygon in responding to or as a result of any Charge brought by him that breaches this Agreement, including reasonable attorneys' fees; (iii) to pay all costs and expenses incurred by Polygon in seeking enforcement of this Agreement, including reasonable attorneys' fees; and (iv) to return the amount paid pursuant to Paragraph 4 – save $500 – within 14 days of written demand by Polygon. In the event this reimbursement provision is triggered, Mr. Benson agrees the remaining provisions of this Agreement shall remain in full force and effect.

8. **NO OTHER CLAIMS PENDING.** Mr. Benson represents and warrants that, with the exception of this Charge and a potential unemployment claim, he has not filed or otherwise initiated any complaint, cause of action or claim against Polygon based on events occurring prior to and including the date he executes this Agreement. Mr. Benson further represents and warrants that, as of the date he executes this Agreement, he is unaware of any outstanding complaints, causes of action or claims against Polygon that involve or relate in any way to his employment with Polygon.

9. **MR. BENSON'S CONFIDENTIALITY.** Mr. Benson agrees to keep the terms of this Agreement confidential. Mr. Benson further agrees to not retain, disseminate or encourage

5

anyone to disseminate the video of the incident at issue in his Charge. Mr. Benson further understands that confidentiality is a material and critical aspect of this Agreement and is of paramount concern to Polygon. Mr. Benson agrees, subject to his rights pursuant to Paragraphs 5 and 7 above, to keep the terms of this Agreement and the video at issue in this Charge confidential, and has not and will not disclose any information concerning the Agreement or the video to anyone except his tax advisor, legal counsel, or anyone required by law to know the contents of the Agreement, provided that he shall inform any of these specified persons that he is bound by a confidentiality covenant and prior to any such disclosure to any of such persons, require that such person agree to abide by the terms of such covenant and not disclose any information concerning the Agreement. Mr. Benson agrees that in the event he is compelled by court order or process to disclose any terms of this Agreement or the video, he shall immediately notify Polygon's Director of Human Resources, Dan McMillion, in writing at least seven days prior to the disclosure. Such written notice will be e-mailed to Mr. McMillion (danmcm@polygoncompany.com) or hand-delivered to Polygon's office, Polygon Company, 103 Industrial Park Drive, Walkerton, IN 46574.

If Mr. Benson publishes or causes to be known the terms of this Agreement or the video, he will be liable for $1,000.00 in liquidated damages for each such breach. The Parties agree it is difficult to value the specific extent of harm that would come to Polygon in the event of a violation of this paragraph, but that $1,000.00 represents the Parties' mutual best assessment of the economic and non-economic harm that would arise from such a breach. As such, the Parties agree the amount is not a penalty. If Polygon prevails in a proceeding to enforce any of the provisions of this Paragraph by proving a breach, it may recover reasonable attorneys' fees and costs from Mr. Benson.

10. **MUTUAL NON-DISPARAGEMENT.** Mr. Benson and Polygon agree they will not make any legally impermissible statements or representations that disparage, demean, or impugn the other, including without limitation Mr. Benson making any legally impermissible statements impugning the personal or professional character of any current or former Polygon director, or officer at Polygon. All employment reference requests by Mr. Benson shall be directed to Dan McMillion, Polygon's Director of Human Resources, who will provide a neutral reference confirming dates of employment and position held.

11. **MEDICARE ISSUES.** The following definitions apply to this paragraph:

    **(a)** "CMS" means the Centers for Medicare & Medicaid Services within the U.S. Department of Health and Human Services, including any agents, representatives, or contractors of CMS, such as the Coordination of Benefits Contractor ("COBC") or Medicare Secondary Payer Recovery Contractor ("MSPRC").

    **(b)** "Conditional Payments" shall have the meaning ascribed to it under the MSP Statute and implementing regulations.

    **(c)** "MMSEA" means the Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L. 110-173), which, in part, amended the Medicare Secondary Payer statute at 42 U.S.C. § 1395y(b)(7) and (8). This

6

                    portion of MMSEA is referred to herein as "Section 111 of MMSEA".

**(d)**    "MSP Statute" means the Medicare Secondary Payer ("MSP") statute. 42 U.S.C. § 1395y(b).

**(e)**    "Released Matter" means any released accident, occurrence, injury, illness, disease, loss, claim, demand, or damages that are subject to this Agreement and releases herein.

**(f)**    "Releasees" means Polygon, as defined in Paragraph 1 of this Agreement.

      Mr. Benson represents and warrants that he is not enrolled in the Medicare program, was not enrolled in the Medicare program at the time of the Released Matters or anytime thereafter through the date of this Agreement, and has not received Medicare benefits for medical services or items related to the Released Matters.

      Mr. Benson acknowledges and agrees that it is his responsibility pursuant to this Release, and not the responsibility of Releasees, to reimburse Medicare for any Conditional Payments made by Medicare on his behalf as of the date of this Agreement or in the future.

      Mr. Benson represents and warrants that no Medicaid payments have been made to or on his behalf and that no liens, claims, demands, subrogated interests, or causes of action of any nature or character exist or have been asserted arising from or related to any Released Matters. Mr. Benson further agrees that he, and not Releasees, shall be responsible for satisfying all such liens, claims, demands, subrogated interests, or causes of action that may exist or have been asserted or that may in the future exist or be asserted.

      To the extent that Mr. Benson's representations and warranties related to his Medicare status and receipt of medical services and items related to the Released Matters are inaccurate, not current, or misleading, he agrees to indemnify and hold harmless Releasees from any and all claims, demands, liens, subrogated interests, and causes of action of any nature or character that have been or may in the future be asserted by Medicare and/or persons or entities acting on behalf of Medicare, or any other person or entity, arising from or related to this Agreement, the payment of the Settlement Amount, any Conditional Payments made by Medicare, or any medical expenses or payments arising from or related to any Released Matters that is subject to this Agreement or the release set forth herein, including but not limited to: (a) all claims and demands for reimbursement of Conditional Payments or for damages or double damages based upon any failure to reimburse Medicare for Conditional Payments; (b) all claims and demands for penalties based upon any failure to report, late reporting, or other noncompliance with or violation of Section 111 of MMSEA that is based in whole or in part upon late, inaccurate, or inadequate information provided to Releasees by Mr. Benson or upon any failure of Mr. Benson to provide information; and (c) all Medicaid liens. This indemnification obligation includes all damages, double damages, fines, penalties, attorneys' fees, costs, interest, expenses, and judgments incurred by or on behalf of Releasees in connection with such claims, demands, subrogated interests, or causes of action. Regardless of the accuracy of the representations and

warranties made above, Mr. Benson agrees to indemnify and hold Releasees harmless for taxes on the payments made to Mr. Benson and any tax consequences related thereto, except those prohibited by law.

It is understood and agreed that Releasees expressly rely upon the promises, representations, and warranties made by Mr. Benson in this Agreement; that any breach of such promises, representations, and warranties would constitute a material breach of this Agreement; and that in the event of any such breach, Releasees shall be entitled to any and all of the following relief: (a) the immediate repayment to Releasees of the full Settlement Amount hereunder; (b) the indemnification and hold harmless protection set forth in this paragraph above; (c) specific enforcement of all promises and undertakings made by Mr. Benson hereunder; and (d) all other relief and damages available at law or in equity.

**12.** **SUCCESSORS.** This Agreement shall apply to Mr. Benson, as well as to his heirs, executors, administrators, and agents. This Agreement also shall apply to, and inure to the benefit of Polygon, the predecessors, successors, and assigns of Polygon and each past, present, or future agent, representative, insurer, trustee, officer, or director of Polygon.

**13.** **SEVERABILITY.** The Parties explicitly acknowledge and agree the provisions of this Agreement are both reasonable and enforceable. However, the provisions of this Agreement are severable, and the invalidity of any one or more provisions shall not affect or limit the enforceability of the remaining provisions. Should any provision be held unenforceable for any reason, then such provision shall be enforced to the maximum extent permitted by law.

**14.** **APPLICABLE LAW AND JURISDICTION.** This Agreement shall be interpreted, enforced and governed under the laws of Indiana without regard to principles of conflicts of law. Moreover, while the Parties do not contemplate any future disputes, Mr. Benson agrees that any action or claim regarding this Agreement or otherwise brought against Polygon by or on behalf of Mr. Benson, Mr. Benson's agents, assigns, heirs, administrators, or executors shall be maintained in Indiana and brought in the United States District Court for the Northern District of Indiana or state courts in St. Joseph County, Indiana. By signing this Agreement, the parties expressly consents to personal jurisdiction in the state courts in St. Joseph County, Indiana and the United States District Court for the Northern District of Indiana.

**15.** **NON-WAIVER.** The waiver by Polygon of a breach of any provision of this Agreement by Mr. Benson shall not operate or be construed as a waiver of any subsequent breach by Mr. Benson.

**16.** **EFFECTIVE DATE.** This Agreement shall become effective on the date the Agreement is signed by Mr. Benson and Polygon Company (the "Effective Date").

**17.** **SIGNATURE IN COUNTERPARTS.** This Agreement may be executed in counterparts, and each counterpart, when executed, shall have the efficacy of a signed original. Such counterparts shall together constitute one and the same document. The Parties agree that facsimile and email signatures shall be treated as original signatures.

**18.** **COMPLETE AGREEMENT.** This Agreement sets forth the complete agreement between the Parties relating to the subjects herein. Mr. Benson acknowledges and agrees that in executing

this Agreement, he does not rely and has not relied upon any representations or statements not set forth herein made by Polygon with regard to the subject matter, basis, or effect of this Agreement or otherwise. Notwithstanding the foregoing, nothing in this Agreement is intended to or shall limit, supersede, nullify, or affect any other duty or responsibility Mr. Benson may have or owe to Polygon by virtue of any separate agreement or obligation.

**BY SIGNING THIS RELEASE, I STATE THAT: I HAVE READ IT; I UNDERSTAND IT AND KNOW THAT I AM GIVING UP IMPORTANT RIGHTS; I AGREE TO ALL THE TERMS CONTAINED WITHIN THE AGREEMENT; I AM AWARE OF MY RIGHT TO CONSULT WITH AN ATTORNEY BEFORE SIGNING IT AND HAVE HAD THE OPPORTUNITY TO DO SO; AND I HAVE SIGNED IT KNOWINGLY AND VOLUNTARILY.**

**TERRENCE D. BENSON, SR.**          **POLYGON COMPANY**

_____     By: _____
Terrence D. Benson, Sr.                  [Printed Name]

Date: November _____, 2018              _____
                                         [Signature]

                                    Its: _____
                                         [Title]

                                    Date: November _____, 2018

#13559351v1

9